Norris, J.
The plaintiff is a Missouri corporation with its residence in that state; the defendant, the Stokes Manufacturing Company, is an Illinois corporation with its residence in that state; the defendant, the Union Cycle Manufacturing Company, is a Massachusetts corporation with its residence in Massachusetts; the Charles F. Stokes Manufacturing Company is an Illinois corporation with its residence in that state; the defendant Charles F. Stokes is a resident of the state of Illinois; the defendant C. Helena Miller lives in this county. These facts appear in the petition, which further alleges that in 1895, plaintiff recovered a judgment in the circuit court of Cook county, Illinois,against the Stokes Manufacturing Company; execution issued on this judgment, to the sheriff of Cook county, Illinois, and was returned unsatisfied; the judgment is still in full force, and the Stokes Manufacturing Company has no property whereon to levy.
The Charles F. Stokes Manufacturing Company of Illinois, in 1893, had a capital stock of $100,000, $90,000 of which was owned by Charles F. Stokes, who was president *146 and general manager of the concern. At the same time there existed in Boston, Massachusetts, the defendant the Union Cycle Manufacturing Company, with a capital stock of $30,000. Stokes was president of this concern and owned $10,000 of its stock, which in fact is worth $75,000. The certificate for this stock was issued in the name of Charles F. Stokes and one Philip Goetz as trustees for the Charles F. Stokes Manufacturing Company. In 1893, the Stokes Manufacturing Company was organized and became the owner of the assets of the Charles F. Stokes Manufacturing Company, including this $10,000 of Cycle Company stock, and assumed its debts, and the Stokes Manufacturing Company ceased to exist. Charles F. Stokes was president and general manager of the Charles F, Stokes Manufacturing Company; this company ceased to do business in 1894.
Charles A. Stokes is the son of Charles F. Stokes, and a large part of the stock of the Charles F. Stokes Manufacturing Company stood in his name, and he was its vice-president.
In 1893, when the Stokes Manufacturing Company owed the Cycle Company, Charles F. Stokes took up this indebtedness and executed his notes therefor. The Cycle stock was given to the Cycle Company as security for the notes of Stokes, a new certificate of stock was issued to Walter Measure and J. Mott Smith as trustees for the Cycle Company, and the stock was transferred on the books of the Stokes Manufacturing Company, and was withdrawn from the books of said company as an asset of said corporation, but plaintiff says in fact said Cycle stock is still the property of the Stokes Manufacturing Company, and liable for the payment of its debts.
Plaintiff further says that the Stokes Manufacturing Company paid the notes of Stokes held by the Cycle Company,except about $4,000,and that Measure and Smith sold the Cycle stock so held as collateral to satisfy this balance. *147 The stock was bought by one William Wallace, who paid this balance of $4,000, and this stock of the Cycle Company,worth $75,000,was issued to him. Plaintiff says that Wallace was acting for the Stokes Manufacturing Company in this transaction, or for Charles F. Stokes, and that the money paid by Wallace to obtain this stock was furnished to him by the Stokes Manufacturing Company, and all this was done to defraud the creditors of the Stokes Manufacturing Company.
Wallace assigned this stock to C. Helena Miller, the sister of Charles F. Stokes, who took it without consideration, and is not an innocent purchaser, and that said stock is in her hands subject to the indebtedness of the Stokes Manufacturing Company.
In 1894, all the assets of the Stokes Manufacturing Company were transferred by Charles F. Stokes to the Cycle Manufacturing Company, and Charles A. Stokes, who had charge of the Stokes Manufacturing Company, transferred to himself all the Denver assets of that concern, and all this without any resolution of the board of directors.
Plaintiff charges that alK these transactions were done with intent to delay and hinder and defraud the creditors of the Stokes Manufacturing Company, particularly the plaintiff, and plaintiff asks to subject this Cycle stock, now in the hands of C. Helena Miller, to the payment of its claim against the Stokes Manufacturing Company.
An attachment appears to have issued in this case, and a temporary injunction was allowed restraining the transfer of the Cycle stock certificate by C. Helena Miller, and thereupon,upon the motion of C. Helena Miller, this attachment was discharged and the temporary injunction was dissolved. A demurrer was filed to this petition by C. Helena Miller upon the ground:
First. That the petition does not state facts sufficient to constitute a cause of action.
*148 Second. That the court has no jurisdiction of the subject matter of this action.
The common pleas sustained this demurrer, and plaintiff not desiring to plead farther, the court gave judgment on the demurrer and dismissed the petition, and adjudged the costs against the plaintiff. From this judgment of the common pleas court the plaintiff takes appeal, and the case is heard in this court upon the same demurrer. The demurrer, of course, admits the well averred facts asserted in the petition. The allegations of fraud and conspiracy to defraud and to delay and hinder plaintiff in the collection of this judgment are sufficiently stated to constitute a cause of action, so that as against the first ground of the demurrer the petition is sufficient.
The Stokes Manufacturing Company, the judgment debt- or, against whom this judgment is sought to be enforced by action, is not a resident of this state, and not a party to this suit.
The Union Cycle Manufacturing Company, whose shares of stock are sought to be subjected' to the judgment, is a resident of Massachusetts, and not a party to this suit. None of the parties mentioned in the petition except the defendant C, Helena Miller are served with process or otherwise brought before the court. The only parties in court are plaintiff and defendant C. Helena Miller, who is the bolder of the .certificate evidencing the shares sought to be reached by this judgment creditor; so the question narrows down to the single proposition as to whether or not the shares of this Massachusetts corporation, property which it is alleged the corporation holds in trust for the judgment debtor, can be reached bv this action, In other words,has the court acquired, or can the court by these proceedings acquire jurisdiction of the subject matter of this action by any of the methods of constructive service, or otherwise, known to the law of this state as means by which its courts *149 acquire jurisdiction of a controversy; and in determining this we are met squarely by this question: What relation does a certificate of stock in a corporation bear to the property of the corporation by which it is issued ? For the case at bar is an action in character brought to subject property in this state, owned by a non-resident of the state, to the payment of the debts of the non-resident; the jurisdiction depending upon the situs of the property. There can be no doubt that the interest of a non-resident in a corporation situated in this state may be the subject of attachment, and the stock is said to be taken in attachment when the notice in garnishment is served on the corporation. In that case the interest of the non-resident debtor which is held in trust by the corporation, has its situs in this state.
It is equally true that certificates of stock are the subject of pledge, and may be held as security for a debt, and such pledge,in the absence of fraud, takes precedence to an after-acquired attachment lien; but it appears that the measures taken to effect such pledge must be more than,a mere deposit of the certificate of stock, and in the instance referred to, which may be found in the case of Norton against Norton, 43 Ohio St., 509, the pledge carried with it the absolute power of sale and transfer upon the books of the corporation; substantially, as between the pledgee and the pledgor, and as between the p!edgee and the corporation, transferring to the pledgee the legal title to the pledgor’s interest in the property of the corporation, only awaiting the act of the pledgee to make perfect by entry of transfer upon the books of the corporation. The contract of pledge in this case went farther than a mere holding of the certificates, but touched the property itself of which the certificates were the vouchers. A certificate of stock, issued by a corporation to one who owns an interest in the property of the corporation and which the corporation holds in trust for him,is not deemed by the law to be a negotiable instrument; *150 it is not a promise to pay which imports value; it is not a bond of the corporation; it is not a promise by the corporation to do anything; it is not an essential to corporate existence. A man may own an interest in corporation property as a shareholder; he may vote as a member; he may transfer his stock without a certificate; his interest in its assets and his liability for its debts do not appear to depend upon his possession of a certificate; all this has been often declared by the courts. The books of the corporation indicate the extent of a shareholder’s interest in tne property of the company; the certificate is not the title; the title exists without the certificate, and independent of it, and the courts do not appear to consider it a necessary evidence of title to the property, and when deposited and held in pledge, it carries with it nothing unless coupled with an absolute power of legal sale and transfer of the stock of which the certificate in the shadow. It cannot be doubted that the situs of the property of a corporation, that which it holds in trust for its shareholders, is the place where the corporation is incorporated and located — the home of the corporation. In a proceeding as the one at bar,being directed against the property itself, the court can only acquire the jurisdiction by taking into its arms the res — the thing of which it seeks to make disposition This cannot be done when the undisputed situs of the property itself is 'in another jurisdiction and in another state. The very fact that the stock of an owner can be fastened by garnishment upon the corporation, is an acknowledgment that the shares are deemed to be in possession of the corporation 'itself, no matter where the certificate may be.
The courts have held broadly and often that the capital stock itself cannot be attached by levying the attachment on the certificate, any more than lands, says the supreme court of Pennsylvania, “lying in another state can be attached by levying the writ upon the title deed.’’ So that, *151 if a certificate of stock in the hands of one who has a right to it is not subject to attachment because it is distinct from the capital stock of the company, and is only looked upon as a convenient voucher, how much less might it represent in the hands of one who has no interest either legal or equitable in the property of the corporation, as is the alleged condition of this defendant, Mrs. Miller, in this, case.
A. D. Fuller, for Plaintiff.
Boss & Kinder, for Defendant.
Looking at the case as I have intimated, we sustain the second ground of demurrer, and dismiss the petition in default of further plea upon plaintiff’s part, at plaintiff’s cost, and enter judgment of dismissal.
It is with some reluctance that Judge Price concurs in his opinion.